UNITED STATES, Appellee,

v.

Specialist Four (E–4) Samuel H. GEORGE, SSN 479–66–4260, United States Army, Appellant.

CM 437365.

U. S. Army Court of Military Review.

18 Jan. 1979.

Reconsideration Denied Feb. 5, 1979.

---

Captain James J. Parwulski, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Major D. David Hostler, JAGC.

Captain Carl F. Meyer, Jr., JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, and Major Michael B. Kennett, JAGC.

Before FULTON, TALIAFERRO and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

In the aftermath of a homosexual assault on a six-and-one-half-year-old boy, the appellant pleaded guilty to charges of kidnapping a minor, assault and battery on a child less than sixteen years of age, and forcible sodomy on a child less than sixteen years of age.[1] His bench trial resulted in conviction and a sentence to dishonorable discharge and confinement at hard labor for seven years, with ancillary forfeitures and reduction in grade. Pursuant to a plea bargain, the convening authority reduced the confinement term to two years and approved all other aspects of the sentence as adjudged.

Upon this review of his conviction pursuant to Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866 (1976), the appellant asserts that the trial judge should have rejected his plea of guilty as being improvident when the evidence indicated a possibility that appellant was suffering from a mental disease and was not criminally responsible for his acts. For the reasons set forth below, we reject this contention and affirm the conviction.

The evidence of mental illness, which was introduced in extenuation and mitigation, is the stipulated expected testimony of a civilian psychiatrist who examined the appellant and concluded that "at the time of the acts, as a result of the character disorder known as pedophilia, the accused lacked substantial capacity to conform his conduct to the requirements of the law."[2] It is to be noted that the terms used are substantially those of the Model Penal Code, infra, except that the appellant's condition is described as a character disorder rather than as a "mental disease or defect."[3]

1. Violations of the Uniform Code of Military Justice, Articles 134, 128, and 125, respectively, 10 U.S.C. §§ 934, 928, 925 (1976). As the kidnapping of a minor was charged, under the "other crimes and offenses not capital" clause of Article 134, as a violation of 18 U.S.C. § 1201 (1976), the maximum punishment included imprisonment for life. See United States v. Perkins, 6 M.J. 602 (A.C.M.R.1978).

2. Pedophilia is described as an abnormal sexual attraction to children. MacDonald, Psychiatry and the Criminal 233 (2d ed. 1969); see also Guttmacher and Weihofen, Psychiatry and the Law 115 (1952).

3. Under the rubric "personality disorders and certain other non-psychotic mental disorders," the American Psychiatric Association Diagnos-

tic and Statistical Manual of Mental Disorders, Second Edition (DSM–II) (1968), lists four types of conditions: personality disorders, sexual deviations, alcoholism, and drug dependence. The sexual deviations are homosexuality, fetishism, pedophilia, transvestitism, exhibitionism, voyeurism, sadism, and masochism. DSM–II at 9–10, 41–46. In an earlier edition, sexual deviation was listed among "sociopathic personality disturbances." Id. at 79. The present categorization is more in accord with an International Classification of Diseases, which divides the mental disorders into psychoses; neuroses, personality disorders, and other nonpsychotic mental disorders; and mental retardation. See id. at 91–92.

Until recently, the Armed Forces used the test of legal insanity stated in the current Manual for Courts-Martial as follows:[4]

A person is not mentally responsible in a criminal sense for an offense unless he was, at the time, so far free from *mental defect, disease, or derangement* as to be able concerning the particular act charged both to distinguish right from wrong and to adhere to the right. The phrase 'mental defect, disease, or derangement' comprehends those irrational states of mind which are the result of deterioration, destruction, or *malfunction of the mental, as distinguished from the moral, faculties.* To constitute lack of mental responsibility, the impairment must not only be the result of mental defect, disease, or derangement but must also deprive the accused of his ability to distinguish right from wrong or to adhere to the right as to the act charged. Thus, *mere defect of character, will power, or behavior,* as manifested by one or more offenses, ungovernable passion, or otherwise, *does not necessarily indicate insanity,* even though it may demonstrate a diminution or impairment in ability to adhere to the right with respect to the act charged. [Emphasis added.]

In 1977, a unanimous Court of Military Appeals adopted instead for military law the test formulated by the American Law Institute (ALI) in its Model Penal Code, as follows:[5]

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.

While it should not be stated categorically that no character disorder, or sexual deviation however denominated, could ever qualify as a "mental defect, disease, or derangement" under the Court-Martial Manual formulation, most such disorders generally have been regarded as not exonerating an accused from criminal responsibility.[6] It has been observed that "real change can scarcely be effected by the use of words which bear a dictionary synonymity with those erased."[7] Well-reasoned opinion suggests that the Manual and Model Penal Code are not essentially different insofar as the nature of exonerating defect is concerned.[8]

The appellant's trial defense counsel, a civilian, evidently agreed with this conclu-

4. Manual for Courts-Martial, United States, 1969 (Rev. ed.). § 120*b.*

5. Model Penal Code § 4.01 (Proposed Official Draft, 1962) was adopted for use under the Uniform Code of Military Justice in *United States v. Frederick,* 3 M.J. 230 (C.M.A.1977). The Court did not substitute "wrongfulness" for "criminality"—an alternative suggested by the bracketed insertion in the ALI text—and expressly included clause (2), which is designed to exclude the so-called psychopathic personality. *Id.* at 237–38. For commentary concerning clause (2), see Model Penal Code § 4.01, Comment (Tent. Draft No. 4, 1955) at 160; Goldstein, *The Insanity Defense* 88 (1967); Lindman and McIntyre, *The Mentally Disabled and the Law* 344 (1961).

6. *See United States v. Trede,* 2 U.S.C.M.A. 581, 10 C.M.R. 79 (1953); *United States v. Lloyd,* 48 C.M.R. 979 (A.C.M.R.1974); *cf. United States v. McMahon,* 4 M.J. 648, 650 (A.F.C.M.R.1977). But *cf. United States v. Merrill,* 34 C.M.R. 901 (A.F.B.R.1964). *See also* U.S. Dep't of Army, Technical Manual No. 8–240, *Psychiatry in Military Law* (1968) §§ 3–4, 3–5, 3–6.

7. Roche, *The Criminal Mind* 180 (1958).

8. Taylor, *Building the Cuckoo's Nest,* The Army Lawyer 32, 35, 36–38 (June 1978). The absence of a definition of the terms "mental disease or defect" has been noted heretofore. *United States v. Chapman,* 5 M.J. 901, 902–03 (A.C.M.R.1977) (Jones, Sr. J., concurring). Discussion concerning the merits and interpretation of the Model Penal Code test has focused mainly on its formulation of the relationship between the mental illness and the act charged (*i. e.,* the "substantial capacity" aspect) rather than on the nature of mental illness required. *See, e. g., United States v. Frederick,* 3 M.J. 230, 236–38 (C.M.A.1977). This circumstance, too, suggests that no definitional change concerning mental disease was contemplated.

sion and believed that his client's condition did not constitute a "mental disease or defect" such as could preclude criminal responsibility under the Model Penal Code. When the stipulated expected testimony was admitted in evidence, the trial counsel asked the judge to consider whether a defense of insanity was thereby raised. The defense counsel interjected:

> I will state for the record on that point, your honor, that as you examine the record you will, in his stipulation you will see that his testimony is to the effect that there was a—the accused lacked substantial capacity to conform his conduct to the requirements of the law as a result of a character disorder known as pedophilia, and I'll be happy to state for the record because if I'm wrong I want to know, that my reading of *United States versus Frederick* and related cases indicates to me that the defense of insanity must be established by the lack of substantial capacity being the result of a recognized mental disease or disorder, specifically other than a character or behavior or personality disorder. And, on that basis, I have advised the accused about the defense of insanity and proceeded in this manner.

At the conclusion of the presentencing proceedings, which included "rebuttal" evidence by an Army psychiatrist, the judge and defense counsel discussed the matter as follows: [9]

> MJ: Before we get into closing argument as to an appropriate sentence, I feel that I should at this point comment for the record that I have considered the evidence and the testimony that has been presented regarding the possible defense of insanity. In reviewing the most recent, I guess, changes of standards enunciated by the Court of Military Appeals in the *Frederick* decision, it appears to me that the law now provides that even if an individual does have some substan-

tial impairment of his capacity to either appreciate criminality or to comply with the requirements of law, there's more required than that and it must stem directly from what is called a mental disease or defect. Now, the report submitted by the defense by Doctor Meymandi itself characterizes the condition known as pedophilia as a character disorder, even though it does talk in terms of a substantial capacity lacking in the accused. The testimony of the government witness, Doctor Reichenthal, likewise apparently would not put the condition of pedophilia within the category of a mental disease or defect such as apparently is required in order to establish this as a defense. Now, all counsel, of course, know that the question of a person's sanity or insanity is one of fact for the finders of fact and as part of their findings they would be instructed that they must find it was a result of a mental disease or defect. Mr. Geimer, I believe that you have in essence stated that you were satisfied that in the case at hand we have not risen to that level, but I just want to make certain that you have, and I'm sure you have, but—hear from you that you've discussed this fully with Specialist George; that he understands that he could present these facts to a court in the effort to convince them that it was a mental disease or defect and thereby have that decision made by the court. You have, have you not?

> CDC: I have, your honor. I have thoroughly reviewed the *Frederick* decision and compared it to the expected testimony of Doctor Meymandi, and prior to entering a plea in this case discussed it in detail with the accused.

9. Called by the prosecution, the Army psychiatrist merely testified as to the diagnostic classification of pedophilia. See note 3, *supra*.

MJ: All right, I am sure you have. In any event, in my review of all the evidence and case law that pertains to this particular situation, it would appear to me that the defense or possible defense of insanity has not been raised to the point that it would require improvidence in the plea in this case. . . .

There was no testimony that the appellant's condition constituted a "mental disease or defect" within the framework of the Model Penal Code formulation or any other. The trial judge performed his duty to bring the matter to the attention of the appellant and his counsel. Evidently convinced that a trier of fact would not decide that the appellant's pedophilia was such a mental disease as would exonerate him even if it impaired his capacity to conform his conduct to the requirements of law, the appellant and his counsel elected to seek the advantages of a guilty plea. Under the circumstances, they were entitled to do so.[10]

The trial judge correctly ruled that the plea was provident.[11] The findings of guilty and the sentence are affirmed.

Judge TALIAFERRO and Judge WATKINS concur.

---

10. *See United States v. Wilson,* 9 U.S.C.M.A. 60, 62–64, 25 C.M.R. 322, 324–26 (1958); *cf. United States v. Logan,* 22 U.S.C.M.A. 349, 351, 47 C.M.R. 1, 3 (1973). *Also cf. United States v. Peterson,* 1 M.J. 972, 975 (N.C.M.R.1976); *United States v. Braye,* 47 C.M.R. 949, 951 (A.C.M.R.1973) (no indication that appellant pleading guilty was aware of possible insanity defense), and *United States v. Roman,* 5 M.J. 385 (C.M.A.1978) (election not to litigate insanity at rehearing).

11. We also note that the staff judge advocate's review fully and correctly advised the convening authority as to the matter of insanity and of his authority and responsibility with respect to that issue.