UNITED STATES, Appellee,

v.

Private First Class John LEVERETTE, Jr., SSN 239–90–0494, United States Army, Appellant.

SPCM 14043.

U. S. Army Court of Military Review.

15 April 1980.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Charles A. Byler, JAGC, and Captain Robert L. Gallaway, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, and Major Douglas P. Franklin, JAGC, were on the pleadings for appellee.

Before FULTON, CLAUSE and FORE-MAN, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

In this appeal, the appellant challenges the providency of his plea of guilty to a charge of violating regulations. We must decide whether a soldier on leave visiting an installation to which he is not assigned, who violates general regulations governing the installation, may be subjected to punishment under Article 92(1) of the Uniform Code of Military Justice, 10 U.S.C. § 892(1) (1976), which does not require that actual knowledge of the regulation be proved.

The regulation in question is Headquarters 101st Airborne Division (Air Assault) and Fort Campbell [Kentucky] Regulation 190-7, *Military Police: Control of Nongovernment-Owned Weapons*, dated 13 January 1975.[1] The regulation provides as follows:

### SECTION I. GENERAL

1. PURPOSE. To control nongovernment-owned firearms, handguns, explosive devices, and other weapons at Fort Campbell, Kentucky. . . .

2. SCOPE. This regulation . . . applies to all individuals physically on this installation. . . .

3. DEFINITIONS. . . . ["Handgun" refers to pistols and revolvers; "firearm," to rifles and shotguns]. . .

### SECTION II. REGISTRATION OF NONGOVERNMENT–OWNED FIREARMS AND NONGOVERNMENT–OWNED HANDGUNS

4. REGISTRATION REQUIRED. Except as provided in subparagraphs a and b below, it is unlawful and a criminal

1. Hereinafter cited, in accordance with its local designation, CAM Reg. 190-7.

offense for any person subject to the UCMJ or any other person to carry or possess any nongovernment-owned firearm or any nongovernment-owned handgun while on the Fort Campbell military reservation unless such item is previously registered with the Office of the Provost Marshal in accordance with paragraph 22 of this regulation.

    a.  Personnel newly assigned to family quarters or bachelor quarters shall register . . . [firearms and handguns] within 72 hours after arrival on the military reservation. Such handguns and firearms must be stored in a unit arms room pending registration.

    b.  Personnel not assigned to Fort Campbell may bring a firearm (see definition in paragraph 3c) onto the Fort Campbell reservation for the explicit purpose of hunting, without prior registration with the Office of the Provost Marshal, provided that the individual can prove that the possession or use of the firearm meets all the following criteria [e. g., as to caliber, type, hunting season, hunting area]. . . .

    \*    \*    \*    \*    \*    \*

22.  REGISTRATION.    Registration . . . procedures are as follows:

    a.  All . . . nongovernment-owned handguns must be registered with the Office of the Provost Marshal prior to bringing them on this installation.

    b.  Temporary registration may be accomplished by accurately completing DA Form 2496 . . . as indicated in Appendix A and filing the same with either the Provost Marshal's Office, the Weapon's [sic] Registration Section, [or] Gate 4 Military Police. . . .

When the appellant violated this regulation, he was on leave while en route from his former duty station in Korea to a new duty station at Fort Stewart, Georgia. He was visiting relatives or friends near Fort Campbell, where he had been stationed before going to Korea. He brought a privately-owned unregistered .32-caliber pistol (i. e., a handgun) onto the Fort Campbell military reservation. This might have escaped notice had he not used it to rob a barracks drug dealer of his supply of marihuana. Somewhat to the appellant's surprise, the victim reported his loss to the military police.[2]

After the appellant was identified and apprehended, he was attached to a unit at Fort Campbell and charged with violating a lawful general regulation (paragraph 4 of the regulation quoted above) by possessing an unregistered handgun (Charge I); stealing from Private Ricky Furr, by means of force and putting him in fear, a quantity of marihuana (Charge II); and (in the course of the robbery) wrongfully possessing marihuana (Charge III).[3] He pleaded guilty to those charges. In return, the convening authority agreed that, if both a punitive discharge and confinement at hard labor were adjudged, he would suspend any confinement in excess of three months for a period of six months. Appellant's approved sentence includes reduction to the grade of Private E-1, forfeiture of $276.00 pay monthly for five months, confinement at hard labor for five months (the period in excess of three months suspended as agreed), and a bad-conduct discharge from the service.[4]

    When appellant entered his guilty plea, the military judge conducted the required hearing. *United States v. Green*, 1 M.J. 453 (C.M.A.1976); *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). In the course of this inquiry, he learned that the appellant was not assigned to any Fort Campbell unit at the time of the offenses. None of the trial participants regarded that as a defense to Charge I. Nevertheless, the appellant now contends

---

2.  Although the victim at first reported it only as a theft of cash rather than cache.

3.  Violations respectively, of Articles 92(1), 122 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892(1), 922, and 934 (1976).

4.  The record of trial is before this Court pursuant to Article 66(b), Uniform Code of Military Justice, 10 U.S.C. § 866(b) (1976).

that his plea was improvident because, not being assigned to the command, he (a) had no duty to obey the regulation,[5] and (b) his knowledge of the regulation could not be presumed. We disagree and hold that his plea of guilty was provident.

### I

▉ The purpose, scope and terms of the Fort Campbell regulation indicate to us no intended exemption for military persons merely because they happened to be visiting Fort Campbell rather than being stationed there. Nor have we found anything in the Uniform Code of Military Justice, the Manual for Courts-Martial, or in the decided cases that necessarily limits the effect of a commander's orders and regulations to only those persons assigned or attached to his command.[6]

▉ The Manual describes "[g]eneral orders or regulations" below the Secretarial level as those "generally applicable to the command of the officer issuing them throughout the command or a particular subdivision thereof." Manual for Courts-Martial, United States, 1969 (Revised edition), par. 171a. The appellant argues that those words indicate the necessity of a command relationship between the authority issuing general regulations and the persons subject to them. Indeed, some boards of review so construed similar provisions of an earlier Manual. *United States v. Lindsey*, 7 C.M.R. 587, 589 (A.F.B.R.1952), *overruled in part on other grounds, United States v. Brousseau*, 32 C.M.R. 858, 862 (A.F.B.R. 1962) (otherwise in accord with *Lindsey*); *United States v. Sullivan*, 3 C.M.R. 457 (N.B.R.1952). We, however, do not believe that the quoted language requires that interpretation. Instead, we believe that it is intended only to indicate that not all regulations issued by a commander empowered to issue general regulations necessarily qualify as general regulations. Some may be narrower in scope. *See, e. g., United States v. Baker*, 17 U.S.C.M.A. 346, 38 C.M.R. 144 (1967); *United States v. Jones*, 21 C.M.R. 783, 791–92 (A.F.B.R.1956); *see also United States v. Koepke*, 18 U.S.C.M.A. 100, 102, 39 C.M.R. 100, 102 (1969).

▉ Accordingly, we conclude that a command relationship in the organizational sense is not fundamental to the application of a general regulation to an individual member of the service.[7] We hold that the appellant, who had knowingly entered a military installation, had a duty to obey regulations governing the installation.[8]

**5.** A plea of guilty is improvident if the accused is innocent as a matter of law. *United States v. Wheeler*, 22 U.S.C.M.A. 149, 46 C.M.R. 149 (1973) (regulation not punitive).

**6.** That general orders are not necessarily limited to persons under direct command of the promulgating authority is indicated by former provisions of the Manual which had the effect of establishing a presumption that one subject to the Code knew the content of any regulation or directive of "a territorial, theater, or similar area command (with respect to personnel stationed *or having duties within such area* )." Manual for Courts-Martial, United States, 1951, par. 154a (4) (emphasis added); *cf. United States v. Chunn*, 15 U.S.C.M.A. 550, 36 C.M.R. 48 (1965) (under existing test, base commander was empowered to issue general regulations because of his broad responsibilities, including responsibility for tenant units not under his command).

Being on leave may limit the duties one can be required to perform. *See, e. g., United States v. Milldebrandt*, 8 U.S.C.M.A. 635, 25 C.M.R. 139 (1958); Davis, *A Treatise on the Military Law of the United States* 383 (3d ed. 1915). The member on leave is not, however, exempt from all application of military law. *Cf. United States v. Hooper*, 9 U.S.C.M.A. 637, 26 C.M.R. 417 (1958) (criminal jurisdiction over retired members).

**7.** While we have no intent to limit our holding, we note that the regulations involved pertained to a widely-regulated subject and were promulgated in obedience to regulations of the Secretary of the Army, which are by definition general regulations even if nonpunitive in nature. *See* Army Regulation 210–10, *Installations: Administration*, par. 2–13 (1977); Army Regulation 190–11, *Military Police: Physical Security of Weapons, Ammunition, and Explosives*, pars. 5–2a, 5–2g (1977). Similar regulations were in effect when CAM Regulation 190–7 was promulgated in 1975.

**8.** Nor is a command relationship a prerequisite to the effectiveness of orders other than general orders. Articles 1(5), 90(2), 91(2), 92(2), Uniform Code of Military Justice, 10 U.S.C. §§ 801(5), 890(2), 891(2), 892(2) (1976).

## II

That the Fort Campbell weapons regulation is of the genus of orders called general regulations has not been disputed. *See* Department of the Army Pamphlet 27–2, *Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition,* par. 171a at p. 28–7 (1970). The significance of its classification is that "Article 92(1) contains no requirement that any kind of knowledge be either alleged or proved in a prosecution thereunder for violating or failing to obey a general order or regulation." Manual for Courts-Martial, United States, 1969 (Revised edition), par. 171a.

■ The second prong of appellant's attack on the providency of his plea of guilty is stated in his brief as follows:

> The appellant acknowledges that under the 1969 changes to the Manual for Courts-Martial, the government is relieved of the obligation of proving constructive notice of local general regulations. . . . However, the appellant contends his status, as being assigned to a unit other than the 101st Airborne Division or any other unit on Fort Campbell, makes the presumption of constructive knowledge of the regulation inappropriate in his case.[9]

The question thereby presented is whether appellant's plea of guilty was improvident because the defense of ignorance of the law was available to him.[10] We hold that it was not.

■ "As a general rule, ignorance or mistake of law, or of properly published regulations or directives of a general nature having the force of law, is not an excuse for the commission of an offense." Manual for Courts-Martial, *supra,* par. 154a(5); *United*

States v. International Minerals & Chemical Corp., 402 U.S. 558, 563, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971). Due process requires, however, that when the requirement is a purely passive one there by some showing of the probability of knowledge. *Lambert v. California,* 355 U.S. 225, 228–29, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957).

■ The lawmakers have a wide latitude to declare an offense and to exclude elements of knowledge and diligence from its definition. *Id.* at 228, 78 S.Ct. at 243. As to the Uniform Code, Congress and the President have adopted a scheme of strict liability in relation to general orders or regulations while requiring, as to other directives, actual notice as an element of punishable disobedience. *See* Articles 1(5), 90(2), 92(2), Uniform Code of Military Justice, *supra.* Accordingly, the Manual notes, "except for general orders or regulations, a person cannot be held responsible for a violation of a military regulation or directive unless he had actual knowledge of the regulation or directive." Manual for Courts-Martial, *supra,* par. 154a(5); *see id.,* pars. 169b, 171b.

■ In the appellant's situation, we find no denial of due process in holding him to obedience of general regulations governing Fort Campbell regardless of actual notice. He assuredly knew that he was within the territorial or operational area of responsibility of the commander. The existence of the regulation reasonably was to be expected in view of the fact that it was necessitated by Army regulations (note "7", *supra*) and dealt with a matter notoriously subject to control in the interests of safety and security of the command. Nor was the requirement placed upon the appellant purely pas-

---

9. We are not blind to the implication stemming from the fact that appellant, as revealed by this record, had been assigned to a unit at Fort Campbell from June 1976 until February 1978 and, therefore, was presumed to know the same regulation during that period. We prefer, however, to base our decision on other grounds.

10. When the facts suggest a possible defense, the military judge must assure that the possibility is understood, otherwise the plea may not

be knowing and intelligent. *See United States v. Jemmings,* 1 M.J. 414, 418 (C.M.A.1976); *United States v. Woods,* 22 U.S.C.M.A. 137, 46 C.M.R. 137 (1973); *see also United States v. Hedlund,* 7 M.J. 271, 273 (C.M.A.1979); *United States v. Young,* 6 M.J. 975, 978 (A.C.M.R. 1979); *United States v. George,* 6 M.J. 880, 884 n. 10 (A.C.M.R.1979); *cf United States v. Craney,* 23 U.S.C.M.A. 519, 50 C.M.R. 658 (1975) (explaining aider-abettor theory).

sive stemming solely from his presence in the command, as was the case in *Lambert v. California, supra.* Instead, to become subject to the weapon registration requirement, it was necessary that he act affirmatively to enter the post bringing with him the weapon, a potentially dangerous object.

Accordingly, just as we have said that soldiers may sometimes become subject to the general orders or regulations of a command other than their own, so also do we hold that they may in instances such as here be held to obedience of them without regard to actual knowledge. Therefore, the appellant's plea of guilty was not improvident.

### III

We deem the remaining assignments of error as similarly nonmeritorious.

The appellant asserts that his plea of guilty to robbery was improvident because the force used (the pistol discussed above) was used to effect his escape rather than to perpetrate the robbery. The facts tell us otherwise.

■ Appellant also contends that his oral pretrial statements to an investigator, admitted during sentencing in rebuttal to his claim of remorse, were improperly received without a showing of voluntariness, and also that the issue of voluntariness should have been submitted to the sentencing court members. The Government suggests that "Article 31, [UCMJ] 10 U.S.C. § 831 is not applicable to extenuation and mitigation hearings . . ." *United States v. Mathews,* 6 M.J. 357, 358 (C.M.A. 1979) (Fletcher, C.J.); *but cf. United States v. Albrecht,* 4 M.J. 573, 576 (A.C.M.R.1977). However that may be, the statements involved were shown to be spontaneous rather than obtained and there was no challenge to their voluntariness. Hence, no issue was raised.

■ Finally, the admission of records of nonjudicial punishment did not insert error into the sentencing proceedings. *United States v. Howard,* 7 M.J. 962 (A.C.M.R. 1979).

The findings of guilty and the sentence are affirmed.

CLAUSE and FOREMAN, JJ., concur.