UNITED STATES, Appellee

v

JAMES C. MILES, Private (E-2), U. S. Army, Appellant

11 USCMA 622, 29 CMR 438

No. 13,612

Decided July 8, 1960

*First Lieutenant Jerome D. Meeker* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod.*

*First Lieutenant Barry L. Kroll* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The issue before us is whether the accused improvidently entered a plea of guilty to some of the charges on which he was brought to trial.

On May 20, 1959, the accused appeared before a general court-martial convened at Fort Dix, New Jersey. He was represented by appointed de-fense counsel and two civilian lawyers who were members of the bar of the State of New Jersey. In due course, he was arraigned on the following charges: Charge I and its specification, which alleged reckless operation of an automobile, in violation of Article 111 of the Uniform Code of Military Justice, 10 USC § 911; Charge II and its specification, which alleged leav-

ing the scene of a collision with three other cars, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934; Additional Charge and three specifications, which alleged housebreaking, in violation at Article 130, Uniform Code of Military Justice, 10 USC § 930; and Additional Charge I, with three specifications, two of which alleged wrongful appropriation of Government property, and one of which charged the larceny of Government blankets of a value of $132.48. The accused entered a plea of guilty to all charges. The meaning and effect of the plea was explained to him by the law officer, both in court and during an out-of-court hearing. In the out-of-court hearing, one of the civilian counsel questioned the accused and established that the accused had conferred with civilian counsel for "hours" and that counsel had "reviewed at rather great length" a statement by the accused regarding the offenses and "the evidence in this case." Counsel had also conferred with the accused's father. It was further established that counsel explained the case in "lengthy detail" to the accused, and the accused was "completely satisfied" with counsel's evaluation of the case. The accused indicated he understood fully the meaning and effect of his plea; that he could withdraw the plea anytime before sentence; and that he knew what he was doing, and his plea was voluntary.

When court reconvened the accused's plea of guilty was formally accepted, and a stipulation of facts regarding the additional charges was received in evidence. Findings of guilty of all charges and specifications were duly returned by the court-martial. During the sentence procedure, civilian counsel presented letters attesting to the accused's good character from persons who knew the accused in his own community. Also presented was evidence which tended to show that, with the exception of twelve white hospital blankets, which were disposed of by the accused, partly by sale and partly by apparent gifts to other soldiers, all of the property taken by the accused in his housebreakings was brought by the accused to his company

supply room to make up inventory shortages which worried the company commander. It may further be inferred from the evidence that the accused had been told by the company commander to try to make up the shortage of specified items by "normal scrounging" activities. In the final argument on the sentence, one of the accused's civilian counsel reviewed the evidence and maintained that statements made by the company commander and other personnel of the company "pushed [the accused] in the wrong direction." However, he concluded his argument as follows:

"This brings me to my closing remark—the punishment. I said before I did not come down here to say Miles was innocent, nor does Miles want me to say that. He has admitted to being guilty and he should be punished for being guilty, but how should he be punished under the circumstances which have been developed at great length and great detail today?"

The court sentenced the accused to a dishonorable discharge, total forfeitures, reduction to lowest enlisted grade, and confinement at hard labor for one year. The convening authority approved the findings of guilty and the sentence, except that in accordance with a pretrial agreement he changed the dishonorable discharge to a bad-conduct discharge. On further review, a board of review concluded that the "peculiar circumstances" of the case justified additional reduction of the sentence. Accordingly, it disapproved the bad-conduct discharge and reduced the confinement to six months and the forfeiture to $43.00 per month for six months. The Acting The Judge Advocate General then remitted the unexecuted portion of the confinement. Thereafter, appellate defense counsel moved the board of review for reconsideration of its decision on the ground that the accused's plea of guilty to the additional charges was improvident. Counsel contended the evidence shows that the accused acted under orders from his superiors, including his company commander. The motion was denied. The accused appealed

to this Court and we granted review to consider the question of the improvidence of the plea, insofar as it relates to the additional charges.

The accused did not testify at the trial; neither has he provided a post-trial statement of his understanding of the role he was to play in making up the supply shortages. The record of trial does not show that the order to the accused to "scrounge" contemplated breaking and entering, although it does appear that after the accused turned up with a large quantity of material it was suspected he may have obtained it illegally. Witnesses testified that "scrounging" entailed the exchange of surplus items for shortage items, or the voluntary transfer by one unit of a surplus item to another unit which had a shortage in that item, on a sort of "good will' basis or as a "gift." Such transfers were considered by the witnesses to be permissible supply practices, but they were sharply distinguished from illegal appropriations. Be that as it may, the plea of guilty admitted, and the accused does not now deny, that he knew he was engaged in illegal conduct when he broke into other buildings to obtain property, without regard to whether the property he took was or was not surplus to the units from which it was taken. If the accused acted in accordance with the terms of an order from his company commander which he knew to be illegal, he is nonetheless guilty of the offenses charged. Cf. United States v Thornton, 8 USCMA 446, 24 CMR 256; see also United States v Schreiber, 5 USCMA 602, 18 CMR 226. In any event, the act committed by the accused was not a mere transfer of property from one unit to another. By taking the property from one custodian and transferring it to another, the accused effectively deprived the former of his right to possession and subjected him to either criminal or civil liability therefor. The fact that ownership was laid in the Government in the specifications instead of in the unit from which the property was taken did not constitute a fatal variance. United States v Craig, 8 USCMA 218, 24 CMR 28. If a teller in a bank finds a shortage in his day's account, certainly he commits larceny if he secretly takes from another teller an amount sufficient to clear his own accounts. That is the situation in this case. In this connection, what we said recently in United States v Clay, 11 USCMA 422, 29 CMR 238, is equally applicable here. "[W]e know why the accused committed the offenses charged, but the reason does not detract one iota from the criminal character of the acts."

Appellate defense counsel contend the accused cannot be guilty of the additional charges because he merely effected the transfer of property from one Army unit to another. The argument is manifestly inapplicable to the hospital blankets which were sold and given away by the accused. The fact that these were ultimately recovered by law enforcement agents mitigates, but does not eliminate, the criminal character of the act. As far as the property taken over by the accused's unit is concerned, the argument disregards the fact that, by his plea, the accused admitted, and has never since denied, he committed the unauthorized housebreakings, and that at the times thereof he intended to appropriate the property for his own purposes. There is no evidence in the record of trial or in the appellate papers before us which in any way suggests that the plea of guilty was improvident. United States v Wilson, 9 USCMA 60, 25 CMR 322.

The record of trial indicates that as far as the additional charges are concerned, except that pertaining to the hospital blankets, the accused was entitled to clemency and that his superiors, if they encouraged him in his misdeeds, deserved severe condemnation. The duty of a military superior is to prevent not to encourage crime. The board of review recognized and fully responded to the situation. It specifically reassessed the sentence "solely upon the basis" of the charges of reckless driving and improperly leaving the scene of an accident. And, in view of its conclusion, that with a "little guidance" the accused would

make a "good soldier," it disapproved the bad-conduct discharge, and reduced the period of confinement. It thereby accorded the accused a full measure of compassion and justice.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur but believe it may be helpful, in order to avoid possible misconception of the law, to append a few additional observations.

As mentioned by the Chief Judge, there is no issue concerning the providence of accused's plea of guilty to the offenses growing out of the operation of the automobile. The findings on all other offenses were ignored by the board of review when it assessed an appropriate sentence, and, therefore, we are concerned only with whether the findings of guilt based on pleas of guilty to the offenses alleged under the additional charges—housebreaking violative of Article 130, and the larceny and wrongful appropriations in violation of Article 121—should be set aside because they were improvidently entered.

The dissenting opinion characterizes the order allegedly given to accused as one "to remove *Government owned property* from *Government buildings* and to deliver it to another *Government building* for the use of *the same Government*." I am not willing to accept that as the substance of the instructions given him, for military property is issued to individuals who must account for it and the loss thereof may subject them to personal liability. If that were not so, the unit commander who allegedly suggested "scrounging" would not have been concerned with shortages. But, even assuming the characterization is appropriate, I am nonetheless certain that does not exculpate the accused from his crimes nor render his pleas of guilty improvident. As I understand the dissent, Judge Ferguson does not suggest that the surreptitious removal of Government property from one Government building to another for use of the same Government is no offense, nor that an unlawful taking by a member of one unit or Government department from another agency cannot be theft. In fact, merely to state such a proposition is to recognize its absurdity, and anyone even remotely familiar with property responsibility and accountability at various levels of the chain of supply would reject it out of hand. What my dissenting brother does appear to assert is that a subordinate given such as order may, regardless of his belief in its propriety or its validity to render his actions lawful, comply with impunity. And that argument by necessary inference indicates that trial defense counsel, by concluding otherwise, ignored a proper and obvious defense. Those contentions cannot be accepted.

In the case at bar accused was represented at the trial level not only by appointed military defense counsel who was duly certified, but in addition by two individual civilian defense counsel, both of whom were admitted to practice before the highest court of the State of New Jersey and one of whom was a member of the bar of the United States Supreme Court. The record reflects that accused conferred with his attorneys at great length, explored various aspects of his case with them, and expressed his complete satisfaction with their analysis of the case and their advice. It is in that background that accused voluntarily pleaded guilty and stipulated to facts showing his guilt of the Article 121 and 130 offenses, and it was after findings that the defense adduced the evidence upon which the present appeal is grounded. However, it is standard practice for defense lawyers to present to the court the best possible case for their client, and this case is no exception. Here the pretrial papers disclose the lawyers had knowledge of much more damaging evidence than they produced, and no doubt one very important reason prompting the plea was to keep evidence of wholesale thievery from being introduced. Defense counsel understood the problem and, before eliciting any facts for the court-martial, he stated that the facts were being offered only in extenuation and mitigation to show accused's motive. And, in the course of his presentation and argument, he expressly pointed out he was not saying that ac-

cused was innocent and he specifically characterized the orders as "unlawful." Further, defense counsel forthrightly stated the defense would not have admitted guilt but rather would have been obliged "ethically, legally and morally" to enter a plea of not guilty had the facts known to them indicated accused was not criminally responsible.

Manifestly the defense did not contend at trial that the evidence adduced during presentencing proceedings was inconsistent with guilt. And it is perfectly obvious why they did not, for there is a fatal hiatus between the facts presented and a valid defense to the charges. That such orders were given to accused might supply the first portion of a defense of honest mistake, but significantly missing is any claim that accused believed the alleged "scrounging" order to be legal; that he must obey it; that he believed it legitimized the acts he did pursuant to it; or that he did not knowingly go far beyond the limits by breaking and entering Government buildings to steal. Accused did not so contend at trial, nor does he do so here, and, of course, he could not for the record, supported by the honest conviction of three defense lawyers, shows to the contrary. In short, the facts presented in mitigation and extenuation, as a matter of law, failed to raise any defense. Thus it is clear beyond peradventure that defense counsel's assessment of the case was quite proper and there is no inconsistency between the guilty pleas and the facts presented to the court-martial.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

In my opinion, the evidence adduced by the accused in mitigation and extenuation is completely inconsistent with his plea of guilty to the Additional Charges of housebreaking and wrongful appropriation. As Uniform Code of Military Justice, Article 45, 10 USC § 845, requires entry of a plea of not guilty if an accused "after a plea of guilty sets up matter inconsistent with the plea," I must disagree with my brothers' conclusion that the conviction may be affirmed simply because his formal judicial confession was "voluntary." See my separate opinions in United States v Watkins, 11 USCMA 611, 29 CMR 427, and United States v Clay, 11 USCMA 422, 29 CMR 238. See also United States v Butler, 9 USCMA 618, 26 CMR 398; United States v Palacios, 9 USCMA 621, 26 CMR 401.

Pursuant to his plea, the accused was found guilty of reckless driving, in violation of Code, supra, Article 111, 10 USC § 911; leaving the scene of an accident, in violation of Code, supra, Article 134, 10 USC § 934; three specifications of housebreaking, in violation of Code, supra, Article 130, 10 USC § 930; two specifications of wrongful appropriation, in violation of Code, supra, Article 121, 10 USC § 921, and one specification of larceny, in violation of the same Article. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade, and confinement at hard labor for one year. A pretrial agreement with the convening authority led to the reduction of his sentence to bad-conduct discharge, forfeiture of all pay and allowances, reduction, and confinement at hard labor for one year. The board of review affirmed the findings but determined that only so much of the sentence as provided for confinement at hard labor for six months and partial forfeitures was appropriate. Subsequently, the Acting The Judge Advocate General of the Army remitted the unexecuted portion of accused's sentence to confinement. We granted review on the issue whether his plea of guilty to the Additional Charges and their specifications was provident.

True it is, as the principal opinion notes, that the accused was fully advised concerning the meaning and effect of his plea, albeit no specific inquiry was made concerning whether he possessed a conscious realization of his guilt. United States v Butler, United States v Palacios, both supra. Nevertheless, after the findings of the court-martial were announced, accused's attorney declared he intended to establish that the sole reason for accused's house-

breakings and wrongful appropriations was the orders of his commanding officer. He proceeded to do just that, for by means of the testimony of various witnesses, it was demonstrated that supply shortages existed in accused's company and other similar units assigned to his battalion. Accused's company commander appointed him "official company scrounger" and directed him to make up the shortages by entering various buildings at Camp Drum, New York, and removing specified items of Army property for distribution among the various battalion organizations. This procedure was made possible by the fact that accused's unit was temporarily assigned to Camp Drum pending the use of that installation by reserve units for summer training. Buildings had been fully equipped with supplies. It was thus a simple matter to enter various unguarded supply rooms and make off with the needed items of property.

The accused having declared, and, indeed, having demonstrated, that his "housebreakings," and "wrongful appropriations" were committed upon the orders of his commanding officers, the question arises whether that showing is inconsistent with his plea of guilty. I think it clear that it is.

In United States v Hayes, 8 USCMA 627, 25 CMR 131, the Chief Judge stated, on behalf of a majority of the Court, at page 629:

"Not every wrongful taking constitutes a violation of Article 121. See United States v Norris, 2 USCMA 236, 8 CMR 36. The intent to deprive the owner of his property, either permanently or temporarily, must include a *mens rea*. Therefore, the mere 'borrowing' of an article of property without the prior consent of the owner does not make out either of the offenses defined in Article 121. *Something more is required, and that something is criminal intention*." [Emphasis partially supplied.]

Of course, the same principle is applicable to housebreaking, in violation of Code, supra, Article 130. It is in the area of intent that the company commander's orders become important, for

if accused acted pursuant to those instructions and obtained property *of the United States for the benefit of the United States*, it is difficult for me to perceive that he possessed the criminal mind necessary for the commission of an offense. Morissette v United States, 342 US 246, 72 S Ct 240, 96 L ed 288 (1952). We were faced with a strikingly similar problem in United States v Thornton, 8 USCMA 446, 24 CMR 256. There, in discussing the materiality of the testimony of a witness whose attendance at the trial was unsuccessfully sought by the accused, we related the defense assertion that he would testify that, as accused's superior, he authorized the actions which led to some of the charges. Of the materiality of this testimony, we stated, at page 449:

"In reviewing the case, the board of review held that the 'major factual issue' was the accused's explanation of his actions. Nevertheless, it concluded that the witness' testimony was immaterial. On that point we reach a different conclusion. Under the evidence, the court-martial could have found that the accused honestly believed he was entitled to be paid for the services he performed in accordance with the adopted plan, or, in the alternative, that he was honestly mistaken about his commanding officer's authority to authorize the plan for payment of compensation. *If the court-martial so found, it would have been duty-bound to acquit the accused of larceny because of the absence of the required criminal intent*." [Emphasis supplied.]

It is thus apparent that we have heretofore pointed out the inconsistency between guilt of crimes involving specific intent and the fact that they allegedly resulted from the orders of superior officers. There is nothing new in permitting command authority to be pleaded as a defense. United States v Gusik, 75 BR 265. It is set forth by Colonel Winthrop as follows:

"That the act charged as an offence was done in obedience to the order—verbal or written—of a military superior, is, in general, a good defence at military law.

628

"The act, however, must have been *duly done*—must not have been either wanton or in excess of the authority or discretion conferred by the order. . . .

"Further the order, to constitute a defence, must be a *legal* one. It must emanate from a proper officer—a superior authorized to give it—and it must command a thing not in itself unlawful or prohibited by law. . . . But for the inferior to assume to determine the question of the lawfulness of an order given him by a superior would of itself, as a general rule, amount to insubordination, and such an assumption carried into practice would subvert military discipline. Where the order is apparently regular and lawful on its face, he is not to go behind it to satisfy himself that his superior has proceeded with authority, but is to obey it according to its terms, the only exceptions recognized to the rule of obedience being cases of orders so manifestly beyond the legal power or discretion of the commander as to admit of no rational doubt of their unlawfulness. Such would be a command to violate a specific law of the land or an established custom or written law of the military service, or an arbitrary command imposing an obligation not justified by law or usage, or a command to do a thing wholly irregular and improper given by a superior when incapacitated by intoxication or otherwise to perform his duty. *Except in such instances of palpable illegality, which must be of rare occurrence, the inferior should presume that the order was lawful and authorized and obey it accordingly, and in obeying it he can scarcely fail to be held justified by a military court.*" [Emphasis partially supplied.] [Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 296–297.]

In United States v Clark, 31 F 710 (CC ED Mich) (1887), the same principle was recognized by the Federal courts.

"So, in the case of *McCall* v *McDowell*, 1 Abb (U. S.) 212, 218, it is said that 'except in a plain case of excess of authority, where at first blush it is apparent and palpable to the commonest understanding that the order is illegal, I cannot but think that the law should excuse the military subordinate when acting in obedience to the order of his commander. Otherwise he is placed in the dangerous dilemma of being liable in damages to third persons for obedience to an order, or to the loss of his commission and disgrace for disobedience thereto. * * * The first duty of a soldier is obedience, and without this there can be neither discipline nor efficiency in the army. If every subordinate officer and soldier were at liberty to question the legality of the orders of the commander, and obey them or not as he may consider them valid or invalid, the camp would be turned into a debating school, where the precious moment for action would be wasted in wordy conflicts between the advocates of conflicting opinions.' It is true this was a civil case for false imprisonment, and these observations were made with reference to a question of malice which was material as bearing upon the plaintiff's right to punitory damages, as it is also a necessary ingredient in the definition of murder." [United States v Clark, supra, at page 716.]

The reasoning of the foregoing authorities is persuasive of the validity of the defense of obedience to superior orders under the limitations which are set forth. Not only is immediate, unquestioning compliance with orders necessary to the maintenance of military discipline, but its existence is inconsistent with the guilty mind which has heretofore been deemed so necessary to support a criminal conviction. Morissette v United States, supra; United States v Hayes, supra. Thus, the author of the opinion in United States v Clark, supra, adverted to its importance in resolving the question whether a member of the armed forces acted maliciously in killing an escaped prisoner. In like manner, its existence does away with the *mens rea* required for the offenses of wrongful appropriation and housebreaking as depicted in this rec-

**629**

ord. While an order to break, enter, and steal from the home of a private citizen might be considered palpably illegal and of no consequence in defense of the individual executing its terms, that is not the situation with which we are confronted. In this case, the accused was ordered to remove *Government owned property* from *Government buildings* and to deliver it to another *Government building* for the use of *the same Government*. To expect him, under such circumstances, to contest the validity of his superior's command is to place upon the shoulders of a private soldier a most unconscionable burden.

Whether or not clemency has been granted him[1] the record demonstrates matter in mitigation which is clearly inconsistent with his plea. We should therefore set the plea aside. Code, supra, Article 45; Manual for Courts-Martial, United States, 1951, paragraph 70.

I would reverse the decision of the board of review concerning the Additional Charges of housebreaking and wrongful appropriation and order them dismissed. I would affirm only so much of the findings of guilty as relate to reckless driving, leaving the scene of an accident, and larceny of blankets.

---

[1] Were the reductions in sentence accomplished by well-meaning appellate authorities material in any respect to our disposition of this case, they would fade into insignificance in view of the indication in the board of review's opinion that accused's commanding officer has not been subjected to disciplinary action.