**UNITED STATES, Appellee,**

v.

**Second Lieutenant Philip L. MEADOW, SSN 450–15–2501, United States Army, Appellant.**

**CM 442145.**

U. S. Army Court of Military Review.

30 Nov. 1982.

Captain Peter R. Huntsman, JAGC, argued the cause for appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Major Robert C. Rhodes, JAGC.

Captain Daniel N. Velling, JAGC, argued the cause for appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Joseph A. Rehyansky, JAGC.

Before MELNICK, McKAY and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Judge:

This case is before the Court for mandatory review pursuant to Article 66, Uniform

Code of Military Justice, 10 U.S.C. § 866 (1976) (hereinafter UCMJ). The appellant, Second Lieutenant Meadow, pleaded guilty to the lesser included offense of wrongful appropriation, but was convicted of larceny of various items of diving equipment and blasting fuse ignitors of a value of $1196.33, the property of the United States Government. The convening authority approved the findings and the adjudged sentence of dismissal from the service. The appellant contends there were numerous errors at his trial. Two of his contentions raise significant issues. They are: (1) That the military judge erred to appellant's substantial prejudice by denying his request for two witnesses. (2) That his plea of guilty to wrongful appropriation is improvident because the appellant took government owned property from one part of the government for the use of another part of the government. We agree in part with the appellant; the denial of his request for one of the requested witnesses was error and requires reversal of the findings of guilty to larceny. His plea of guilty to wrongful appropriation, however, is provident.

The record of trial establishes that officials of the Naval Coastal System Center, in Panama City, Florida, seized the subject property during a consent search of the appellant's assigned Bachelor Officer Quarters (BOQ). At the time, the appellant, a Reserve officer, was on active duty to attend a Navy diving course, i.e., the Ship Salvage Diving Officers Course. From the start, the appellant admitted that he took the subject property, but that he intended to take it back to his Reserve unit so that the unit could use it for training and other official purposes. He maintained his unit had a chronic shortage of its authorized equipment, and that although the unit was not authorized the specific type property that he had taken from the Navy, it was to be authorized similar type equipment several years in the future. The only other evidence presented by the government of an intention to permanently deprive the United States Government of the use and benefit of the subject property was an oral statement the appellant made to the Army

liaison officer to the school. In that statement, the appellant said that one of the reasons he was attending the course was his desire to obtain a salvage rating and go into business for himself.

Prior to trial, the appellant made a request to the trial counsel as required by paragraph 115a, Manual for Courts-Martial, United States, 1969 (Revised edition) (hereinafter MCM), for the presence of Dr. Ray E. Warren and Mr. Jimmy Q. Cannon as witnesses at his trial. Dr. Warren employed the appellant as a "medical technician" prior to his entry upon active duty. The appellant asserted that the doctor would testify to the appellant's trustworthiness and that his job gave him access to controlled substances and large sums of money. Mr. Cannon was a sergeant in the appellant's Reserve unit, and the appellant asserted he would testify as to the unit's supply problems and its lack of equipment. The trial counsel disagreed that either man was a necessary witness and, as required by the MCM, passed the request to the convening authority who denied it. The appellant renewed the request before the military judge at a pretrial Article 39, UCMJ, 10 U.S.C. § 839, session, and it was again denied.

■ The appellant did not provide the convening authority with the information required by paragraph 115a, MCM, and his summary denial was correct. We believe, however, that it would have been more practical for the convening authority first to have advised the appellant his request would be denied if he failed to provide the required information in a timely fashion. We say this because paragraph 115a, MCM, allows an accused to renew a witness request at trial "as if the question arose for the first time during the trial". If it is then established that the witness' testimony on the merits is material and necessary, attendance will be required by the military judge. *United States v. Courts,* 9 M.J. 285 (C.M.A.1980). As should have been foreseen, the appellant renewed his request at trial for the two witnesses and provided detailed information of their expected testi-

mony to the military judge. With respect to the request for Dr. Warren, the denial by the military judge was error.

█ Rule 404(a)(1), Military Rules of Evidence, provides that evidence of a pertinent trait of the character of an accused offered by an accused is admissible. There would appear to be no question, but that testimony of an accused's trustworthiness, when charged with larceny, would be admissible on the merits under this rule. S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual,* (1981), Rule 404 (Editorial Comment at p. 181). *See United States v. Bell,* 11 C.M.R. 605 (N.B.R. 1953); *See also United States v. Pettiford,* 27 C.M.R. 617, 623 (A.B.R.1958). In renewing the request for Dr. Warren at the trial, counsel for the appellant advised the military judge that the doctor would provide testimony both as to the appellant's trustworthiness and his truthfulness. He then made an offer of proof to establish a basis for Dr. Warren's knowledge of these traits that indicated employment of the appellant by Dr. Warren for two years. The trial counsel acknowledged talking to Dr. Warren by telephone and that in general he would testify to the appellant's truthfulness and trustworthiness. He also acknowledged that the testimony would not be cumulative. With the benefit of this information, the military judge should have found that Dr. Warren's testimony would be admissible, material, and necessary.

█ We are aware that an accused does not have an absolute right to the attendance of a witness, *United States v. Sweeney,* 14 U.S.C.M.A. 599, 34 C.M.R. 379 (1964), and that materiality alone does not establish entitlement to the presence at trial of a witness. *United States v. Tangpuz,* 5 M.J. 426 (C.M.A.1978); *United States v. Williams,* 3 M.J. 239 (C.M.A.1977). Where materiality has been established, however, an accused has the right to have the non-cumulative testimony of the witness, unless some alternate form will not "diminish the fairness of the proceedings". *United States v. Courts, supra; United States v. Scott,* 5 M.J. 431 (C.M.A.1978).

█ The evidence of the appellant's guilt of larceny is not overwhelming. To the contrary, in our opinion his guilt of that offense is a close question. Under these circumstances *Courts* required the military judge to determine within his discretion whether some other form of testimony was permissible. The trial was in Alabama and Dr. Warren was in Texas (the government brought one of its witnesses from Massachusetts), and he was available and willing to come. As a doctor with more than ordinary success (he operated three clinics) the credibility and import of his live testimony would be greater than that of the average witness. In a close case as is this, his presence and testimony negating the government evidence may well have made the difference between a finding of guilty to wrongful appropriation, in accordance with the plea, as opposed to larceny. Accordingly, we find that Dr. Warren's live testimony would have been particularly critical and his absence diminished the fairness of the proceedings. It was therefore necessary. The pretrial request to the convening authority and the resulting inquiry by the trial counsel provided the government ample notice of the critical nature of the expected testimony. It also provided the time to procure the witness. We hold that the failure to grant the request for Dr. Warren's presence was prejudicial error notwithstanding that the government stipulated to the doctor's expected testimony.

█ Ordinarily our holding with respect to the denial of the requested defense witness would end any requirement for further consideration of the case. As we have noted, however, the appellant pleaded guilty to the lesser included offense of wrongful appropriation, but now contends that plea is improvident. The basis for his contention is that there is no evidence that he intended to deprive the government/owner of the use and benefit of the subject property—he merely intended to transfer it from the Navy to his Army Reserve unit, *i.e.,* a transfer of government property from one part of the government to another. Therefore, no violation of Article 121, UCMJ, 10 U.S.C. § 921, occurred.

The appellant cites *United States v. Sneed,* 17 U.S.C.M.A. 451, 38 C.M.R. 249 (1968) (government never lost dominion and control over property as its agents were always in possession of the goods and therefore no larceny could occur), and *United States v. Satey,* 16 U.S.C.M.A. 100, 36 C.M.R. 256 (1966) (instruction to the effect that intentional diversion of monies from petty cash in violation of regulation was larceny, despite the fact that some money was used to benefit government, was erroneous, as eliminating specific intent permanently to deprive the true owner, the government, of the use and benefit of the money), to support his contention. Accepting, *arguendo,* appellant's claim that he intended to utilize the subject property to accomplish the mission of his Army Reserve unit, we do not believe either case provides any support for his position.

The government argues that indeed one can violate Article 121 by taking property from one part of the government for transfer to another part, and cites *United States v. Miles,* 11 U.S.C.M.A. 622, 29 C.M.R. 438 (1960), as dispositive of the issue. Whether such conduct is larceny or wrongful appropriation is a matter of intent only, says the government. In *Miles,* the appellant engaged in the housebreaking of government buildings on an Army installation. Miles transferred some of the property taken during his escapades to his company supply room to make up inventory shortages.[1] Pursuant to his plea Miles was convicted of wrongful appropriation. On appeal he contended that this charge was improper because he merely effected the transfer of property from one Army unit to another.

*Miles* has a separate opinion by each of the three judges then constituting the Court of Military Appeals. As analyzed by Judge Kilday in *United States v. Satey,* supra, the lead opinion in *Miles* by Chief Judge Quinn decided only the question of the providence of Miles' plea. In his concurring opinion, Judge Latimer "placed that concurrence on the view that conceding all that was tendered by evidence after findings, the appellant was guilty"[2] of the charged offenses. The third Judge (Ferguson) found the plea improvident noting that the appellant was ordered to remove the subject property "from one Government building and to deliver it to another Government building for the use of the same Government". He believed this evidence raised the issue of honest mistake for which there was no instructions given the court members. Nevertheless, in their opinions both Chief Judge Quinn and Judge Latimer stated (dicta though it be) clearly and unequivocally their belief that a person could steal property from one Army unit by taking it for the purpose of transferring it to another Army unit. While neither Judge cited any authority for this proposition, both rationalized that the custodian of the property was responsible for it to the government, the owner, and was subject to criminal and civil liability for its loss. Thus the custodian had a possessory interest of which he was deprived and that was entitled to the protection of the law. They therefore found Miles' guilty plea to be provident.[3] We agree with that rationale and hold the appellant's guilty plea to wrongful appropriation in this case to be provident.

---

1. Other property taken was sold and given away by Miles. This property was charged separately as larceny and resulted in a finding of guilty to that offense in accordance with his plea.

2. *United States v. Satey* at 261.

3. *See also United States v. Pitts,* 2 U.S.C.M.A. 106, 30 C.M.R. 106 (1961) in which Judge Latimer again states the same opinion. *Pitts* also has a separate opinion from each of the three judges. The accused was convicted of larceny when he was found with meat from a Navy galley in his truck. He claimed he took the meat, in the Navy practice known as "cumshaw", to trade to another unit for supplies which could not be obtained through normal supply channels. Chief Judge Quinn assumed the practice of "cumshaw" negated the specific intent required to support a conviction of larceny, but notwithstanding, held that the particular facts of the case justified a finding of guilty of larceny. Judge Ferguson dissented because of the absence of instructions on the defense of mistake.

■ Except for the *mens rea,* under Article 121, UCMJ, the law of wrongful appropriation is identical in all respects with the law of larceny. Paragraph 200*b,* MCM.[4] Both offenses are prohibited by Article 121, UCMJ, which:

> ... requires that the taking, obtaining, or withholding be from the *possession* of the owner or any other person. Care custody, management, and control are among the legal definitions of *possession.* The term "owner" refers to the person who, at the time of taking ... [has] the superior right to *possession* of the property ... [Emphasis added].

Paragraph 200*a*(3), MCM.[5] It is clear from this provision of the MCM that the incident of ownership protected by Article 121 is the possessory interest. "A true owner is one, who at the time of the taking, obtaining or withholding, had the superior right of possession of the property in the light of all conflicting interests therein". *United States v. McGregor,* 6 C.M.R. 709 (A.F.B.R. 1952). Two legal interests may co-exist in the same property and the invasion of either may sustain a larceny prosecution. *United States v. Leslie,* 13 M.J. 170 (C.M.A. 1982); *People v. Hansen,* 28 Ill.2d 322, 192 N.E.2d 359 (1963), *cert. denied,* 376 U.S. 910, 84 S.Ct. 665, 11 L.Ed.2d 608 (1964) (property held in bailment, either the bailor or the bailee may be considered the victim of a theft). Article 121, UCMJ, therefore may be violated by taking government owned property, with the requisite intent, from the possession of one governmental unit and transferring it to another governmental unit.

During the inquiry into the providency of the appellant's guilty plea to wrongful appropriation, the military judge established that the appellant wrongfully took the subject property and hid it in his BOQ room. When he took the property, he intended that it be used by his "unit back home". The military judge explained to him that the owner was "[w]hoever has the superior right to possession", and the appellant acknowledged that "I temporarily deprived them because it was in my room". We are satisfied that regardless of whatever other offense may have been established by the evidence presented on the merits in this case, the military judge properly accepted the appellant's guilty plea to wrongful appropriation.

■ One final matter requires discussion. The specification alleged the owner of the property to be the United States Government and the appellant contends that the military judge erred by instructing, over his objection, that the Naval Coastal Systems Center was the "rightful owner". We have found that it is the possessory interest that is protected by Article 121, UCMJ, and that the true owner for this purpose is whoever has the superior right of possession. The appellant's objection raises an issue of whether the variance here is fatal. We hold that it is not.

Paragraph 200*a*(3), MCM, provides that "the ownership of the property may be alleged to have been in any person other than the accused who, at the time of the theft, was a general owner or a special owner". *See United States v. Cohen,* 12 M.J. 573 (A.C.M.R.1981). A variance as to ownership is fatal only if it is prejudicial. *United States v. Miles, supra; United States v. Craig,* 8 U.S.C.M.A. 218, 24 C.M.R. 28 (1957); *United States v. Jones,* 29 C.M.R. 651 (A.B.R.1960). Here the appellant was informed of the nature of the charges against him—a wrongful taking of United States Government-owned specified property—and was able to prepare his defense. The instructions of the military judge do not materially change the nature of the charge, as both the United States Government in general and the Navy in particular, or even an unknown individual custodian of the subject property, are shown by the evi-

---

**4.** It is larceny if the intent is permanently to deprive or defraud another person of the use and benefit of property, and wrongful appropriation if the intent is only temporarily to so deprive or defraud. *See* paragraph 200, MCM.

**5.** The word "person" as used in paragraph 200*a* (3), MCM, includes a government. *See United States v. Leslie,* 13 M.J. 170 (C.M.A.1982.)

dence of record to have a superior right of possession to that of the appellant. Finally, the appellant is adequately protected from another prosecution for the same offense. Therefore, even if technically erroneous, the specification is not legally incorrect, and the military judge's instructions are not misleading.

We have considered the issues raised by the appellant concerning the denial of his motion to suppress and to dismiss for lack of jurisdiction and find them to be without merit. Our disposition makes it unnecessary for us to decide whether the military judge erred by his denial for special findings by the members.

Only so much of the findings of guilty of the Charge and its specification as finds that the appellant did, at the Naval Coastal System Center, Panama City, Florida, between 5 June 1981 and 21 September 1981, wrongfully appropriate, one pair MK 12 under garment, one NSDS # 21 MK 1 mask frame, 3 MK 1 earphones, three gaskets (NSN 5330–00–202–1283), one first stage MK 1 regulator, SN 74–26844, one pair MK 12 outer garment, and two package ignitor time blasting fuse, of a total value of about $1196.33, more or less, the property of the United States Government, is affirmed. The sentence is set aside. A full rehearing on the greater offense of larceny, or a rehearing on the sentence alone for the affirmed lesser included offense of wrongful appropriation may be ordered by the same or a different convening authority.

Senior Judge MELNICK and Judge LEWIS concur.