Accordingly, I would set aside appellant's sentence of death.

UNITED STATES

v.

**John F. REAP, 575 92 6844, Corporal (E–4), U.S. Marine Corps.**

**NMCM 91 2722.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 2 April 1991.

Decided 18 Oct. 1993.

---

LT Randall L. Chambers, JAGC, USNR, Appellate Defense Counsel.

R.J. Dove, Civilian Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before FREYER, WELCH and MOLLISON, Senior Judges.

MOLLISON, Senior Judge:

The principal issue in this appeal from a general court-martial conviction is whether the appellant's pleas of guilty were providently entered. We conclude that they were and affirm.

The appellant was charged with conspiring to dispose wrongfully of military property, violating a lawful general regulation by wrongfully possessing privately owned firearms, dealing in captured or abandoned enemy property, and wrongfully disposing of military property in violation of Articles 81, 92, 103, and 108, respectively, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 903, 908. The appellant was tried in Al Jubail, Saudi Arabia, on 2 April 1991. Pursuant to a pretrial agreement, the appellant pled guilty to the conspiracy, the orders violation and the wrongful disposition of military property offenses, and not guilty to the offense of dealing in captured or abandoned enemy property. A military judge, sitting alone, sentenced the appellant to be confined for 15 months, to forfeit all pay and allowances, to be reduced to pay grade E-1, and to be discharged from the Marine Corps with a bad-conduct discharge. The convening authority suspended confinement in excess of ten months, but otherwise approved the sentence as adjudged.[1] The appellant's case is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866.

The appellant asserts four errors were committed in the course of his court-martial proceedings.[2] They concern the providence of his guilty pleas, the admissibility of a document offered during the pre-sentencing procedure, and the appropriateness of the sentence.

■ An accused may not enter inconsistent, improvident or uninformed pleas of guilty. UCMJ, art. 45, 10 U.S.C. § 845. Before the military judge may accept an accused's plea of guilty, he must personally inform the accused of the nature of the offense to which the plea is offered and must personally inquire into the factual basis for the plea. Rule for Courts–Martial (R.C.M.) 910(c), (e), Manual for Courts–Martial (MCM), United States, 1984; *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969). Inconsistencies and apparent defenses must be resolved or the guilty pleas must be rejected by the military judge. *United States v. Jemmings*, 1 M.J. 414 (C.M.A.1976); *United States v. Jackson*, 23 M.J. 650 (N.M.C.M.R.1986), *petition denied*, 24 M.J. 405 (C.M.A.1987). The military judge is not required "to embark on a mindless fishing expedition to ferret out or negate all possible defenses or inconsistencies." *Jackson*, 23 M.J. at 652. Rather, the military judge is required to deal with potential issues raised in the providence inquiry or during the trial that indicate an inconsistency or a defense. *Id.* When the accused's responses reasonably raise the question of a

---

1. The appellant's pretrial plea bargain agreement with the convening authority only required the suspension of confinement in excess of 12 months. Appellate Exhibit II.

2. I. THE APPELLANT'S PLEA TO CHARGE II AND THE SPECIFICATION THEREUNDER WAS IMPROVIDENT.
   II. THE APPELLANT'S PLEA TO CHARGES I AND IV AND THE SINGLE SPECIFICATIONS THEREUNDER WAS IMPROVIDENT.
   III. IT WAS PLAIN ERROR TO ADMIT AS AGGRAVATION THE PAGE 12 FROM THE APPELLANT'S SERVICE RECORD REFLECTING A NONJUDICIAL PUNISHMENT FROM A PREVIOUS ENLISTMENT.
   IV. THE APPROVED SENTENCE IS INAPPROPRIATE IN THAT IT IS EXCESSIVELY SEVERE ON ITS FACE AND IN COMPARISON WITH OTHER SENTENCES ADJUDGED IN RELATED CASES.

defense, the military judge must make a more searching inquiry. *United States v. Timmins,* 21 U.S.C.M.A. 475, 45 C.M.R. 249, 1972 WL 14168 (1972). In short, a provident plea of guilty is one that is knowingly, intelligently, and consciously entered and is accurate and consistent, both factually and legally. *United States v. Sanders,* 33 M.J. 1026 (N.M.C.M.R.1991).

■■■ A Court of Military Review may not set aside a finding of guilty or the sentence on the basis of an error of law unless the error is materially prejudicial to the substantial rights of the appellant. UCMJ, art. 59(a), 10 U.S.C. § 859(a). Claims of error concerning findings based on guilty pleas can generally be articulated as follows: (1) something was omitted in the guilty plea inquiry, such as an advisement or a particular question, and/or (2) the accused set up matter that is legally or factually inconsistent with the plea of guilty. If the claim of error concerns the former, that is, an advisement or the scope of the questioning, a Court of Military Review will examine the entire record to ascertain whether the accused was adequately advised and whether his admissions reasonably support the conclusion that the plea is factually accurate. *See United States v. Jones,* 34 M.J. 270 (C.M.A.1992); *United States v. Walker,* 34 M.J. 264 (C.M.A. 1992); *United States v. Crouch,* 11 M.J. 128 (C.M.A.1981); *United States v. Roller,* 37 M.J. 1093 (N.M.C.M.R.1993) (en banc). As to the latter, the record must contain some reasonable ground for finding an inconsistency between the plea and the accused's statements, and reversal will not follow from the mere possibility of a conflict. *United States v. Logan,* 22 U.S.C.M.A. 349, 47 C.M.R. 1, 1973 WL 14641 (1973); *United States v. Logan,* 31 M.J. 910 (A.F.C.M.R.1990); *United States v. Tichy,* 50 C.M.R. 526, 1975 WL 15669 (N.C.M.R.1975). "The bottom line ... is that rejection of the plea requires that the record of trial show a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). *See also United States v. Newsome,* 35 M.J. 749, 751 (N.M.C.M.R. 1992).

■■■ The appellant was charged with two offenses in connection with AK–47 assault rifles. In Charge II, he was charged with violating a lawful general order of United States Central Command (USCENTCOM) by wrongfully possessing two AK–47 assault rifles in the USCENTCOM area of responsibility, contrary to Article 92, UCMJ, 10 U.S.C. § 892. This offense allegedly occurred in Al Jubail, Saudi Arabia, from about 1 January 1991 to about 16 March 1991. In Charge III, the appellant was charged with wrongfully dealing in certain captured or abandoned enemy property, to wit: two AK–47 assault rifles of a value in excess of $100.00, in violation of Article 103, UCMJ, 10 U.S.C. § 903. This offense allegedly occurred in Al Jubail and Ras al Ghar, Saudi Arabia, from about 1 January 1991 to about 20 March 1991. Pursuant to a plea bargain agreement, the appellant pled guilty to the orders violation and not guilty to the Article 103 offense. The Government withdrew with prejudice the Article 103 offense before entry of findings. Record at 47.

The military judge examined the appellant on the factual basis of his guilty pleas before the military judge accepted them. In that examination the appellant admitted that during Operation Desert Storm AK–47 assault rifles were lying all over the desert floor after battle and were readily available to front-line troops; that between 1 January 1991 and 16 March 1991, the appellant was working at the port of Jubail; that the appellant received the two AK–47 assault rifles late in the evening from another Marine who no longer wanted possession of them; that the appellant knew that he should not keep AK–47 rifles; that the appellant put the rifles out of sight behind a "conex box;" that less than 24 hours later, the appellant transferred possession of the rifles to his brother and fellow Marine with the intent to bring the weapons back to the United States to have as mementos; that appellant knew he should have turned the weapons in and he knew how to do that; that there were "amnesty boxes" available the appellant could have used; and, that what he did was wrong. Record at 29–34.

The military judge had the pertinent general order attached to the record of trial. Record at 28. The order, which the military judge read to the appellant, provided in part: "PROHIBITED ACTIVITIES: a. Purchase, possession, use or sale of privately owned firearms, ammunition, explosives, or the introduction of these items into the US-CENTCOM AOR [area of responsibility]." Appellate Exhibit IV. During the guilty plea examination, the appellant also admitted that he had a duty to obey this order; that possession of AK–47 assault rifles would violate the order; that the order prohibits not only the introduction of weapons into the US-CENTCOM AOR, but also their purchase within Saudi Arabia; that the appellant felt that these were his personal weapons; and, that he had no right to them. Record at 31.

On appeal, the appellant now contends that his guilty pleas are legally inconsistent with another item in the list of "PROHIBITED ACTIVITIES" within the same order:

In the event of armed conflict, taking of war trophies.

(2) Prohibition:

\*　　\*　　\*　　\*　　\*　　\*

(b) Enemy public property captured by the U.S. Armed Forces is the property of the United States. The wrongful retention of such property is a violation of Article 103, Uniform Code of Military Justice.[3]

Based on this provision, the appellant now cleverly argues that the rifles were captured enemy property; that title to the rifles was in the United States; and, therefore, the rifles could not be "privately owned" under the order.

The record does not show that the rifles were enemy public property captured by the United States or whether the Government could ever have proved the chain of title to these weapons, but if we assume that these rifles were enemy property captured by U.S. Armed Forces, we do not believe the appellant, having treated the rifles as his own personal property and having admitted that he felt they were his own personal weapons, is now in a position to deny his own assertion

of title and plead the Government's title in his own defense.

■ In essence, the appellant boldly contends that the Article 92 and Article 103 offenses, apparently pled for contingencies of proof, are mutually exclusive and, having negotiated a pretrial agreement to plead guilty to the lesser of the two, now claims in his defense that he was really guilty of the more serious all along. We recall, however, that if an accused pleads guilty and during the providence inquiry his responses establish a different but closely related offense having a similar maximum punishment, the guilty plea may be affirmed on review. *United States v. Hubbard,* 28 M.J. 203, 206 (C.M.A.1989); *United States v. Epps,* 25 M.J. 319, 323 (C.M.A.1987); *United States v. Felty,* 12 M.J. 438 (C.M.A.1982). We believe this case is a perfect candidate for the application of the *Felty/Epps* principle.

In this case the appellant pled guilty to an Article 92 offense carrying a maximum confinement of two years, whereas an Article 103 offense involving enemy property of more than $100.00 carries a maximum of five year's confinement and an Article 103 offense involving enemy property of a value of $100.00 or less carries a maximum punishment of 6 month's confinement. MCM, 1984, Part IV, ¶¶ 16e, 27e; UCMJ, art. 56, 10 U.S.C. § 856. Charge III (the withdrawn, Article 103 offense) alleged property of a value of more than $100.00, however, the guilty plea examination does not establish the value of the property. In either case, the punishment was substantially similar to that offense upon which the appellant negotiated his plea of guilty. Accordingly, we will not now reject the appellant's guilty plea to Charge II.

■ The appellant also pled guilty to Charge IV alleging wrongful disposition of military property, a starlight scope and four tool box kits, and guilty to Charge I alleging a conspiracy to commit same. During the military judge's examination of the appellant on these offense, the appellant admitted that while at Al Jubail, Saudi Arabia, the appellant took the starlight scope from a pile of

---

**3.** *See generally* Navy Regs., art. 0830.2 (1990); 10 U.S.C. § 6011.

boxes and the tool boxes from a pallet of boxes; that he gave the property to his brother for his brother's own use or the use of his brother's unit; that the property had not been abandoned; that the property was military property of the United States; that the property was of a value of over $100.00; that the appellant was not the custodian of the property; and, that the appellant had no authority to make this disposition of the property. Record at 20–27. The appellant now claims his guilty pleas to these offenses were improvident inasmuch as what he did was nothing more than "cumshawing." [4]

▮▮▮ Article 108 provides that "any person subject to [the UCMJ] who, without proper authority ... sells or otherwise disposes of ... any military property of the United States, shall be punished as a court-martial may direct." UCMJ, art. 108, 10 U.S.C. § 908. Wrongful disposition of military property includes any unauthorized pledge, barter, exchange, loan, or gift of military property. *United States v. Faylor*, 8 U.S.C.M.A. 208, 24 C.M.R. 18, 19, 1957 WL 4689 (1957) (citing and quoting W. Winthrop, *Military Law and Precedents* 708 (2d ed., 1920 Reprint)). "Article 108 proscribes a variety of unauthorized dispositions of military property without regard to the beneficiaries. Instead, the Article is directed against the unauthorized surrender of the use of, the control over, or the ostensible title to, military property." *Faylor*, 8 U.S.C.M.A. at 209; 24 C.M.R. at 19. *See also United States v. Schwabauer*, 37 M.J. 338 (C.M.A. 1993).

> The plain meaning of the term "dispose of" is "to exercise finally, in any manner, one's power of control over; to pass into the control of someone else; ... or get rid of." The word "disposal" is defined as: "[t]o exercise control over; to direct or assign for a use; to pass over into the control of someone else." Black's Law Dictionary 423 (5th ed. 1979).

4. "Cumshaw" refers to a so-called naval custom "whereby goods are bartered or traded from department to department in order to avoid delays, technicalities and red tape incident to acquisition through regular supply channels."

*United States v. Holland,* 25 M.J. 127, 128 (C.M.A.1987). The elements of this offense are that: (1) the accused sold or otherwise disposed of certain property; (2) the sale or disposition was without proper authority; (3) the property was military property of the United States; and, (4) the property was of a certain value. MCM, 1984, Part IV, ¶ 32b(1). The appellant's admissions establish the accuracy of each of these elements. His claim that what he was doing was nothing more than "cumshawing" is not inconsistent with his pleas of guilty. "Cumshawing" is not a defense to the offense of wrongful disposition of military property unless it rises to the level of a claim of authority or a claim of an honest and reasonable mistaken belief of authority. *See United States v. Pitts,* 12 U.S.C.M.A. 106, 30 C.M.R. 106, 1961 WL 4407 (1961); *United States v. Miles,* 11 U.S.C.M.A. 622, 29 C.M.R. 438, 1960 WL 4528 (1960); *United States v. Meadow,* 14 M.J. 1002 (A.C.M.R.1982); R.C.M. 916(j). The admissions by the appellant to the military judge suggest neither a claim of authority nor a mistaken belief of authority. Accordingly, there is nothing that is legally or factually inconsistent with the appellant's pleas of guilty to these offenses.

We also conclude any error respecting the admission of the record of nonjudicial punishment was waived and did not constitute plain error which may now be asserted on appeal. Mil.R.Evid. 103. We further conclude that the sentence was appropriate in appellant's case.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Senior Judge WELCH concurs.

FREYER *, Senior Judge (dissenting in part):

I find merit in the first of appellant's assignments, none in the remainder.

*United States v. Pitts,* 12 U.S.C.M.A. 106, 107, 30 C.M.R. 106, 107, 1961 WL 4407 (1961).

* Captain Freyer took final action on this case prior to his departure.

Charge II alleges that appellant, sometime during the period 1 January 1991 to about 16 March 1991, violated General Order No. GO–1, Headquarters, United States Central Command, dated 30 August 1990. He is alleged to have violated the order by possessing two captured AK–47 automatic assault rifles at Al Jubail, Saudi Arabia, the United States Central Command Area of Responsibility during Operation Desert Storm. From the providence inquiry, it is clear that the weapons in question were enemy property.

Paragraph 2a of the order in question (Appellate Exhibit IV) prohibits the "[p]urchase, possession, use or sale of privately owned firearms, ammunition, ... or the introduction of these items into the USCENTCOM AOR." Paragraph 2i(1)(b), however, specifically states that "[e]nemy public property captured by the U.S. Armed Forces is the property of the United States. The wrongful retention of such property is a violation of Article 103, Uniform Code of Military Justice."

In short, the very terms of the general order appellant is alleged to have violated impugn the providence of his plea. The factual allegations of the specification and appellant's admissions during the providence inquiry establish appellant's guilt not to the violation of a general order, as alleged, but to a violation of Article 103, UCMJ. Article 103, however, carries a greater maximum punishment than Article 92,[1] thus leaving this Court in no position to substitute a finding of guilt to a violation of Article 103, the plea to an Article 92 violation being improvident. *United States v. Hubbard,* 28 M.J. 203, 206 (C.M.A.1989); *United States v. Epps,* 25 M.J. 319, 323 (C.M.A.1987); *United States v. Felty,* 12 M.J. 438 (C.M.A.1982). As a result, I believe we cannot affirm the finding of guilty to Charge II.

Accordingly, I would set aside the finding of guilty of Charge II and, in the interests of judicial economy, dismiss it. I join in affirming the remaining findings of guilty. On reassessment of the sentence in accord with the principles of *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990) and *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), I would affirm only so much of the sentence as provides for confinement for 10 months, reduction to pay grade E–1, forfeiture of all pay and allowances, and a bad-conduct discharge.

---

**1.** The punishment calls for confinement for 5 years when the property in question is of a value greater than $100.00. Paragraph 27e(1)(b), Manual for Courts–Martial, United States, 1984. It cannot be contended seriously that two AK–47's are worth less than $100.00, particularly when, in Charge III (withdrawn by the Government), those two rifles were alleged to be worth more than $100.00.