UNITED STATES, Appellee

v.

John F. REAP, Corporal, U.S.
Marine Corps, Appellant

and

Michael W. Reap, Sergeant, U.S.
Marine Corps, Appellant.

Nos. 94–0499 and 94–0562.
CMR Nos. 91 2722 and 91 3290.

U.S. Court of Appeals for
the Armed Forces.

Argued April 5, 1995.

Decided Sept. 27, 1995.

For John F. Reap: *Captain John F. Havranek*, USMC (argued); *Lieutenant Alan D. Titus*, JAGC, USNR, and *Lieutenant Alice B. Lustre*, JAGC, USNR (on briefs).

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Colonel J. Composto*, USMC, and *Commander S.A. Stallings*, JAGC, USN (on briefs); *Colonel T.G. Hess*, USMC.

For Michael W. Reap: *Lieutenant Paul J. Ferdenzi*, JAGC, USNR (argued).

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Colonel J. Composto*, USMC, *Commander S.A. Stallings*, JAGC, USN, *Lieutenant Commander Paul Jones*, JAGC, USNR (on briefs); *Colonel T.G. Hess*, USMC.

*Opinion of the Court*

COX, Judge:

1. We have consolidated these two cases which were tried separately and will dispose of both in this opinion.

2. Pursuant to their pleas, both appellants (who are brothers) stand convicted of conspiring to wrongfully dispose of military property; wrongfully disposing of military property; and violating a lawful general order by wrongfully possessing firearms while stationed in a combat zone, in violation of Articles 81, 92,[1] and 108, Uniform Code of Military Justice, 10 USC §§ 881, 892, and 908, respectively. The findings and sentences[2] as approved by the convening authority in both cases have been affirmed by the Court of Military Review.[3] See 39 MJ 653 (1993), as to John, and unpub. op. dated October 18, 1993, as to Michael.

3. Before this Court, both appellants challenge the providence of their pleas. As to the offenses relating to the wrongful disposition of military property, they contend that the providence inquiry shows only that they were engaged in the practice of "cumshawing"[4] and thus did not have the intent to commit the offense. As to the weapons charge, appellants argue that the Court of Military Review erred by finding that they had a possessory interest in the weapons.[5]

## I

4. The records of trial in these cases show that Corporal John Reap was an active duty Marine, assigned to a logistical support unit that deployed to Saudi Arabia in support of combat forces during Operation Desert Shield/Desert Storm. While not directly involved in a supply function, Corporal Reap's unit did support other units through the "Quick Exchange Program," a procedure apparently designed to speed the replacement of damaged items between "multiple units normally separate, functions consisting of standard armory or Organic Readiness Float ... [and] special projects in reference to the MPS [Maritime Preposition Supply] ships." Sergeant Michael Reap was a member of the Marine Corps Reserve, called to active duty with his unit during that same crisis and assigned to Saudi Arabia.

5. Corporal Reap transferred a starlight scope and four tool chests to Sergeant Reap, who took them to his unit. These items were not on any organizational inventory, and Corporal Reap did not obtain any type of receipt for them when he transferred them to his brother. Likewise Sergeant Reap made no effort to place the items on his unit's property list and, in fact, kept them hidden among his personal gear or in the unit communications center until they were discovered.

6. During the presentence stage of the trials, there was considerable discussion about the motives of both appellants and of

---

1. The General Court–Martial Order regarding Sergeant Reap erroneously refers to Article 91, Uniform Code of Military Justice, 10 USC § 891.

2. Sergeant Michael Reap was sentenced to a bad-conduct discharge, confinement for 3 years, total forfeitures, and reduction to E–1. Corporal John Reap was sentenced to a bad-conduct discharge, confinement for 15 months, total forfeitures, and reduction to E–1. The convening authority suspended confinement in excess of 10 months for Corporal Reap (all confinement exceeding 7½ months was later remitted), and confinement in excess of 12 months for Sergeant Reap.

3. See 41 MJ 213, 229 n. * (1994).

4. The term "cumshaw," meaning to obtain supplies through irregular channels, appears to have its origins in the British Navy slang from the early 1800s. Other similar terms (actually having more illegal overtones) include "drawing midnight small stores" or "midnight requisitions." *New Dictionary of American Slang* 91, 278 (Chapman ed. 1986). See 39 MJ at 658 n. 4.

See also *United States v. Pitts*, 12 USCMA 106, 30 CMR 106 (1961).

5. The issues granted review were:

### I
WHETHER THE COURT OF MILITARY REVIEW MISAPPLIED THIS COURT'S HOLDINGS BY RULING THAT THE INFORMAL TRANSFER OF PROPERTY FROM ONE UNIT TO ANOTHER ("CUMSHAWING") CAN QUALIFY AS WRONGFUL DISPOSITION OF GOVERNMENT PROPERTY IN VIOLATION OF UCMJ ARTICLE 108.

### II
WHETHER THE COURT OF MILITARY REVIEW ERRED IN FINDING THAT APPELLANT COULD ACQUIRE A PERSONAL POSSESSORY INTEREST IN PROPERTY BELONGING TO THE UNITED STATES SIMPLY BY EXPRESSING HIS OPINION THAT THE ITEMS WERE HIS PERSONAL PROPERTY.

As for the third granted issue (40 MJ 38), *see* 41 MJ 340 n. 2 (1995).

the system of informally obtaining organizational property outside normal channels, *i.e.,* "cumshawing it." The tenor of the evidence was that each appellant knew that cumshawing was not authorized, but believed that it was tolerated. Yet in fact Sergeant Reap stated that he knew that taking the property was "violating military law."

7. Nonetheless, before this Court both appellants assert that, because they were merely engaged in an informal transfer of supplies, they had no criminal intent in making this exchange. From this they contend that the lack of any mens rea rendered their pleas to conspiracy and wrongful disposition improvident.

■ 8. We have recognized that, under certain circumstances, an accused may defend against larceny or other similar crimes (*i.e.,* wrongful disposition) by arguing that he was acting under some color of authority or under a reasonable and honest mistake of fact by taking military property for official use, albeit outside normal supply channels. *United States v. Pitts,* 12 USCMA 106, 108, 30 CMR 106, 108 (1961). However, the facts admitted during the providence inquiries in these cases belie any such mistake.

■ 9. During the providence inquiries, each appellant was carefully questioned by the military judge as to whether he had any belief that he was authorized to engage in such a practice. In each case the individual appellant responded that he did not. Moreover the criminality of their acts was also conceded during their statements in extenuation and mitigation. Given these acknowledgements, it seems clear that each appellant understood that his conduct was illegal. Any statement that raised the possibility that such conduct might be winked at was, at best, an attempt to justify their acts and not truly inconsistent with guilt. *See United States v. Penister,* 25 MJ 148, 153 (CMA 1987). Therefore, the guilty pleas to conspiracy and wrongful disposition of military property were provident.

## II

10. The facts as to the second granted issue show that each appellant came into possession of captured Iraqi AK–47 assault rifles. Notwithstanding the clear language of the general order requiring the surrender of such weapons and an amnesty period in which they could have been turned over to proper authorities without penalty, Corporal Reap took two rifles, concealed them, and then turned them over to his brother for the purpose of bringing them back to the United States. In addition to the weapons given to him by his brother, Sergeant Reap purchased five other rifles from British soldiers.

11. Following investigation, both appellants were charged with violating a lawful general order prohibiting possession of personally owned firearms in Saudi Arabia, a charge laid under Article 92. In the alternative, the Government alleged that this misconduct violated Article 103, UCMJ, 10 USC § 903, wrongfully dealing in captured enemy property. At trial, pursuant to negotiated pleas, they admitted that their activities violated the order against possession of personal weapons. They also admitted that the order was both a general order and lawful. The Charge under Article 103 was withdrawn.

12. Both appellants now assert that as a matter of law they had no property interest in the weapons and, therefore, cannot be convicted of violating the terms of the order prohibiting possession of weapons. They point to language in the Manual for Courts Martial, United States, 1984, related to Article 103 which prohibits dealing in captured or abandoned enemy property.

13. It is true that paragraph 27c(1)(a), Part IV, Manual, *supra,* states: "Immediately upon its capture from the enemy, public property becomes the property of the United States. Neither the person who takes it nor any other person has any private right in this property." However, it is clear that this statement is meant to bar servicemembers from asserting any title to that property and to preclude the sale of captured property to other individuals.

■ 14. In this case, the regulation does not deal with title to the property. Rather, it prohibits the physical possession of any

weapon (other than the issued service weapon) no matter how the member came into possession of it.

15. Title and possession are two different concepts in property law. The former does not necessarily include the latter. One may hold title to an object without possessing it and vice versa. Possession involves the power and intent to control an object. In the case of personalty, it usually involves the physical control of it. *Compare* 63A AmJur 2d, Property § 30 "Title" *with* § 35 "Possession."

16. Here it is clear that both appellants had "possession," *i.e.*, physical control of the weapons. This was prohibited by the order, and the fact that Article 103 may have deprived them of legal title is of no moment. Therefore, the Court of Military Review properly concluded that their pleas to violating a lawful general order were provident.

In No. 94–0499: The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

In No. 94–0562: The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS concur.

SULLIVAN, Chief Judge, concurring:

17. I agree with Judge Cox's resolution of this case. I note, however, that nothing said in this opinion is inconsistent with my opinion in *United States v. McGowan*, 41 MJ 406, 412 (1995) (Sullivan, C.J.). There, I noted that "if the accused also intends to help his own military unit at the actual expense of another unit possessing the property, a sufficient criminal intent has been found to exist (as this is not wholly a government purpose). *See United States v. Kastner*, 17 MJ 11, 15 ¶ 9 (CMA 1983); *United States v. Miles, supra* [11 USCMA 622, 29 CMR 438 (1960) ]." Appellant's and his brother's cases fit within this rule.